Curia, per

O’Neall, J.
The cases referred to by the Recorder, are decisive of the first ground of appeal. That *366 the defendant,"though a non-corporator and non-resident, is liable for a breach of the city ordinance, and may be sued and convicted thereof in the city coart, is the express language of the cases referred to. The form of the proceeding is an action of debt for the penalty, but, substantially, it is a criminal proceeding on the part of the city, for the violation of her law. The second ground makes the question, whether the city court could try the case, inasmuch as the city judge, (the Recorder,) the sheriif and the jury, were all corporators, and, therefore, interested in the recovery of the penalty. The case of Hesketh vs. Braddock, 3 Burr. 1847, is that which was relied upon by the defendant. The action there was to recover a penalty, imposed by a by-law of the Mayor and Aldermen of the City of Chester, in pursuance of a custom, authorizing them to make bylaws to enforce customs, among which was alleged to be a custom, that none but a freeman of the city could keep an open shop for retail. The by-law directed that the recovery of the penalty should be in the Portemote Court, to be held before the Mayor. The challenge there, was to the array, on the ground that the sheriffs who arrayed the jury for the defendant’s trial in the Portemote Court, were citizens and freemen of the city, and, therefore, interested, and it was held that the challenge was well founded.
It will be remarked that that case depends altogether upon the common law, and if the city court depended upon the same for its jurisdiction, the objection might be fatal. But the establishment and jurisdiction of the city court commences with the Act of 1801. (7 Stat. 300.) By that Act it is clothed with the power of trying all offences against the by-laws of the city, and for that purpose is given concurrent jurisdiction with the court of Sessions. This grant of power is from all the people of the State, through their Legislature, and surely they have the power to dispense with the common law objection, that the cor-porators were interested, and ought not to be intrusted with the enforcement of their laws against others. The authority given to the city court to try all offenders against the city ordinances, impliedly declares, that notwithstand *367 ing the common law objection, it was right and proper to give it the power to enforce the city laws against all offenders. That there was great reason in this, cannot be doubted, when it is remembered that the interest of the corporators is so minute as not to be even thought of, by sheriff, juror or judge. It is very much like the interest which similar officers would feel in enforcing a State law, the sanction of which was a penalty. The sum thus to be recovered goes in exoneration of some part of the burden of government to which every citizen is subjected ; but such an interest has no effect upon the mind. It is too slight to excite prejudice against a defendant. The same thing is the case here. For the judge, sheriff and jurors, are members of a corporation of many thousand members. What interest, of value, have they in a fine of twenty dollars? It would put a most eminent calculator to great trouble to ascertain the very minute grain of interest which each of these gentlemen might have. To remove so shadowy and slight an objection, the Legislature thought proper to clothe the city court, consisting of its judge, clerk, sheriff and jurors, with authority to try the defendant, and he cannot now object to it.
The other grounds raise the questions, whether the defendant’s offence is such an one as the corporation had the power to provide against by its by-laws, and whether he has violated the ordinance.
The power given to the city council to make such bylaws, rules and ordinances, respecting the harbor, streets, lanes, public buildings, work-houses, markets, wharves, public houses, carriages, wagons, carts, drays, (fee. as to them shall seem expedient and necessary, is certainly wide enough to embrace the defendant’s case. It is possible that the city council might even (if they could be mad enough to commit such a suicidal act,) provide that no carriage, cart, wagon or dray, should pass any of the streets, without paying for a license or paying toll. For it might be very well said, we make the streets, we have power to make laws respecting them, and we think it right to be paid for the convenience which we afford the people. But when a man outside of the city proposes to make his *368 living, in part or in the whole, by pursuing a business which the corporators have confined to themselves, unless a license be taken out, I do not perceive how he can be allowed to pursue it in any other way. The defendant here, in claiming to pass over the streets daily, in carrying freight from the wharf to the Rail Road without a license, has no more right to do so, than he would have to a stall in the market, without complying with the city ordinances in relation to the market.
The 3d section of the city ordinance, under which the penalty is claimed against the defendant, (City Ordinances, 41,) provides, that in case any person or persons shall let or drive for hire, any cart, dray, wagon, omnibus, or other carriage, within the city, without having first obtained such license as aforesaid, and without having the number of such license (and no other) printed on tin, in figures not less than three inches long, on the after part of either shaft, upon the square thereof, so as to be easily seen, and without having- for the management of the same, a sober, discreet and able person, such person or persons shall forfeit and pay a sum not less than twelve dollars nor more than twenty dollars.
That the defendant did drive a wagon for hire, through the streets of the city, is proved. This is within the very words of the ordinance, and the penalty is incurred.
The motion for a new trial is dismissed.
Evans, Butler, Wardlaw, and Frost, JJ. concurred.